## Appeal of G. F. COTTER SUPPLY CO.          Docket No. 997.

On the evidence, *held*, that the taxpayer was not a personal service corporation.

Submitted April 2, 1925; decided May 6, 1925.

*E. Barrett Prettyman, Esq.*, for the taxpayer.
*Edward C. Lake, Esq.*, for the Commissioner.

Before STERNHAGEN, TRAMMELL, and PHILLIPS.

This appeal involves a deficiency in income and profits taxes for the calendar year 1918 in the amount of $3,705.68.

### FINDINGS OF FACT.

Prior to August, 1917, the G. F. Cotter Supply Company was a partnership composed of two partners, one of whom was G. F. Cotter. Its business consisted of acting as the agent of manufacturers of railroad supplies in the sale of their products to railroads, and its earnings consisted of commissions upon sales consummated. Its sales were negotiated by the partners, Cotter traveling for this purpose. The partnership did not carry any merchandise and did not guarantee the payment of the accounts which arose out of sales made by it. Sales were negotiated in behalf of the manufacturers and goods were billed direct to the railroads which were held responsible for the payment thereof.

Cotter died on August 7, 1917. His widow, Mary F. Cotter, succeeded to his share in the business and also acquired the undivided interest of the other partners. She incorporated the business in September, 1917. The capital stock was $10,000, none of which was paid in, in cash or property, except to the extent of the assets consisting of cash, furniture, fixtures, and securities which had belonged to the partnership. Mrs. Cotter owned all of the capital stock of the corporation except qualifying shares. Card G. Elliott owned one share and William Cotter owned one share.

Pursuant to a resolution passed at a meeting of the stockholders held on February 4, 1918, the capital stock of the corporation was reduced from $10,000 to $1,000.

On April 2, 1918, after the capital stock had been reduced to $1,000, Mary F. Cotter agreed to sell to Elliott five of the ten shares of the capital stock, said sale being made as of January 1, 1918. The contract provided that this stock could be paid for over a period of five years and, at the option of Elliott, out of earnings attributable to that stock. The stock was issued in Elliott's name and delivered to him, but the contract provided that the title to none of said stock should pass from Mary F. Cotter to Elliott until the entire consideration for all of the stock had been paid. It was not paid for in 1918. The contract further provided that the certificates for the shares of stock included in the contract, when issued and delivered, should carry on the face thereof a notation to the effect that they were nonassignable and subject to the terms of that contract. Another provision of the contract was that Elliott should be employed by the taxpayer corporation and also by the Houston Tie & Lumber Company in a managerial capacity; that he should give his entire time, attention, and services, for a period of five years from January 1, to the two corporations, and that he should receive a salary for his services to the taxpayer corporation of $300 per month, and not less than $250 per month for his services to the Houston Tie & Lumber Company.

It was stipulated by counsel that Elliott devoted his entire time to the business of the taxpayer corporation and carried on the activities which Cotter had theretofore performed. Throughout the year 1918 the income of the corporation arose from sales negotiated by Elliott almost exclusively with customers theretofore secured by Cotter. In all respects the business was carried on as it had been during the lifetime of Cotter. Elliott was president, Mary F. Cotter, vice president, and Maud E. Terry, secretary. Maud E. Terry, after the reduction of the capital stock, held a qualifying share. She gave her entire time to the business and assisted Elliott in running the office.

Mary F. Cotter was a member of the board of directors, and from June 30, 1918, to December 31, 1918, was vice president of the company. She attended all the meetings of the board of directors and all stockholders' meetings during 1918. As vice president and director she kept herself informed as to the affairs of the company from periodical business statements and personal conferences with Elliott, the president, sometimes at the company's office but more usually at her home in Houston, Texas. She was well acquainted with the customers and manufacturers for whom the old partnership acted dur-

ing the lifetime of her husband, which acquaintanceship continued during 1918. She received no salary. The entire amount of $3,600 paid as salary by the corporation was paid to Elliott. Capital was not a material income-producing factor.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

TRAMMELL: The taxpayer contends that it was a personal service corporation and as such was exempt from tax under the provisions of section 231 (14) of the Revenue Act of 1918.

It is the contention of the Commissioner that the income is not to be ascribed primarily to the activities of the principal owners or stockholders who were themselves regularly engaged in the active conduct of the affairs of the corporation.

The first statutory provision to be met, in order to entitle the corporation to classification as a personal service corporation, is that the income must be ascribed primarily to the activities of the principal stockholders. Mary F. Cotter was vice president and a director and an owner of at least 40 per cent of the stock of the corporation. She attended the directors' meetings, which were held about once a year. She kept herself informed as to the activities of the corporation by reading statements and reports sent to her at her home by Elliott. She occasionally had personal conferences with Elliott at the office, but more usually at her home. She had an acquaintance with the customers during the lifetime of her husband and continued the acquaintance during the year involved. The income, however, was not attributable primarily to any services she rendered the corporation. She was not regularly engaged in the active conduct of the affairs of the corporation. The foregoing facts preclude the taxpayer from exemption as a personal service corporation, and it is not necessary to decide whether Elliott was the owner of the stock referred to in the contract of sale between him and Mary F. Cotter.